UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSS COOPERMAN, M.D., LLC, ON BEHALF OF PATIENT LPH,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, BLUE CROSSBLUE SHIELD OF TEXAS, AND FIDELIS COMPANIES, LLC,<br><br>Defendants. | Case No. 2:19-cv-19225-WJM-MF |

## AMENDED COMPLAINT

By way of this Amended Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff Ross Cooperman, M.D., LLC, on behalf of Patient LPH ("Plaintiff") brings this action against Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), Blue Cross BlueShield of Texas ("BCBSTX") (collectively, the "BCBS Defendants"), and Fidelis Companies LLC (the "Plan Defendant" (together, "Defendants").

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendants' under-reimbursement to Plaintiff for post-mastectomy breast reconstruction surgical services.

2. BCBSTX was one of the claims administrators of the Plan Defendant, under which the Patient, LPH, was the Plan participant.

3. Under the Blue Card Program, which applied in this case, BCBSTX was the Home Plan, and Horizon was the Host Plan.

1

4. Horizon applied its own payment methodology and denied Plaintiff's appeal of the significant under-reimbursement of claims in this case, as well as imposing out-of-network patient responsibility liability on the Patient, thus making Horizon a claims administrator or, alternatively, the agent of BCBSTX.

5. Patient LPH designated Plaintiff as her Authorized Representative under ERISA.

6. Patient LPH was initially diagnosed with breast cancer. On July 26, 2018, she underwent a bilateral mastectomy, and immediately following, the first stage of bilateral breast reconstruction surgery was performed by Ross Cooperman, M.D. On November 29, 2018, as part of the continuation of care, Dr. Cooperman performed the second stage of bilateral breast reconstruction surgery.

7. Dr. Cooperman does not participate in Horizon's network of contracted health care providers.

8. After each of these breast reconstruction surgeries, Plaintiff submitted invoices in the form of CMS-1500 forms as required to Defendant for a total amount of $431,592.00. Defendants reimbursed Plaintiff only $5,485.66, leaving an unreimbursed amount of $426,106.34, and taking into account patient responsibility, $423,379.56.

## JURISDICTION

9. The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

10. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over them.

11. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Horizon resides, is found, has an agent, and transacts business in the District of New Jersey, (b) Horizon conducts a substantial amount of business in the District of New Jersey, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the District of New Jersey; (c) BCBSTX transacts business in the District of New Jersey through its Host Plan, Horizon, under the Blue Card Program and directly by sending appeal letters and other correspondence to its members in the State; and (d) Fidelis Companies LLC transacts business in the District of New Jersey by employing individuals in the State (including the Patient) and by providing health insurance to those employees who are plan participants and beneficiaries of its Plan.

12. Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where she resides or alleges that the violation of ERISA occurred. Plaintiff alleges that Defendant violated ERISA within the District of New Jersey.

## **PARTIES**

13. Plaintiff Ross Cooperman, M.D., LLC, is led by double Board-certified Plastic and Reconstruction Surgeon and General Surgeon. Ross Cooperman, M.D., who specializes in breast reconstruction and other microsurgical procedures. Its principal office is in Livingston, New Jersey.

14. Defendant Horizon Blue Cross Blue Shield of New Jersey is a health care insurance company with offices located in New Jersey and offers Blue Cross Blue Shield-branded health care insurance in the State of New Jersey. It is one of the claims administrators and/or agent of the claims administrator of Plan Defendant.

15. Defendant Blue Cross BlueShield of Texas is a health care insurance company with offices located in Texas. It is the claims administrator of the Plan Defendant.

16. Defendant Fidelis Companies LLC is a recruiting and consulting firm in the areas of IT and engineering. Its principal office is in Plano, Texas.

## FACTUAL ALLEGATIONS

### A.     The Blue Card Program

17. The Blue Card Program, in which each Blue Cross Blue Shield companies must participate, including Horizon and BCBSTX, was the direct result of the practice of all the BCBS companies, under the direction of the Blue Cross Blue Shield Association ("BCBSA"), to engage in exclusive geographical market allocation. Under this practice, each BCBS company was given a specific geographic market to market health insurance. This practice continues today.

18. Horizon's allocated exclusive market is the State of New Jersey. Accordingly, it cannot offer health insurance in the State of New York (which is allocated to Empire), or Philadelphia (which is allocated to Independence Blue Shield), or the State of Texas, which is allocated to Blue Cross BlueShield of Texas.

19. Blue Cross BlueShield of Texas' allocated exclusive market is the State of Texas. It cannot offer health insurance in any adjacent state. It cannot offer health insurance in the State of New Jersey.

20. These restrictions insulate each BCBS Defendant from competition from the other in each of their respective exclusive geographic market areas.

21. As part of their mandatory agreement to participate in the Blue Card Program, the Blue Cross Blue Shield Defendants commit that other than in contiguous areas (counties adjacent to their allocated geographical market areas), they will not contract, solicit or negotiate with providers outside of their allocated geographical market areas.

22. This has been described as a provider boycott agreement between the Blue Cross Blue Shield Defendants. To make it work, the BCBSA created Home and Host Plans.

23. The Blue Cross Blue Shield insurer in the exclusive geographical area through which the member is enrolled is the Home Plan. The Blue Cross Blue Shield insurer located in the exclusive geographical area where the service is provided is referred to as the Host Plan.

24. BCBSTX relies on Horizon's network under the Blue Card Program, since Horizon is the Host Plan where the provider's services are provided.

### B. July 26, 2018, First-Stage Breast Reconstruction

25. On July 26, 2018, Patient LPH, who suffered from bilateral ductal carcinoma, underwent a bilateral mastectomy with tissue expander reconstruction at Saint Barnabas Medical Center. This first of two surgeries meant that the patient first would undergo a bilateral mastectomy performed by one surgeon specializing in oncology and then another surgeon who specialized in breast reconstruction, and his team would perform the first stage of bilateral breast reconstruction. Both surgeries would be performed on the same day, back to back, and the patient would be in the same operating room and under the same anesthesia.

26. Breast reconstruction is a complex surgery. It involves the placement of a tissue expander in flaps that will become the reconstructed breasts. The tissue expander expands the skin and allows the subsequent placement of the breast implant.

27. Dr. Cooperman, who does not participate in Horizon's network, performed the first-stage breast reconstruction surgery.

28. Dr. Cooperman received prior authorization from Horizon under 18204AAE9G to perform these medically necessary procedures. He received an in-network exception.

29.  After performing this first-stage breast reconstruction surgery, Plaintiff submitted an invoice on a CMS-1500 form to Horizon, as required, for $177,304.00.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 19357-50 | $147,304.00 | $0 |
| 15777-50 | $30,000.00 | $0 |
| **Total** | **$177,304.00** | **$0** |

30.  $2,759.83 was applied to LPH's deductible.  Therefore, Patient LPH owed the entire amount of her first-stage breast reconstruction surgery.

31.  CPT 19357 is breast reconstruction. CPT 15777 are flaps and grafts procedures.  This is an add-on code to CPT code 19357.  Modifier -50 means a bilateral procedure.

32.  Plaintiff filed a first-level appeal concerning the amount of Defendant's reimbursement of Plaintiff's bill on August 13, 2018.

33.  Plaintiff also filed a Blue Claims Appeal Form.  This form was required to be submitted to Horizon in Neptune, New Jersey, and was, on December 14, 2018.

34.  BCBSTX denied this appeal in a letter dated January 4, 2019.

35.  BCBSTX concluded that the "Charge exceeds the priced amount for this service.  Services provided by a non-Participating Provider.  Patient is responsible for charges over the priced amount."

36.  The January 4, 2019, letter continued, quoting from Defendant Plan Summary Plan Description (the "SPD"):

> For Hospitals and Facility Other Providers, Physicians, and Professional Other Providers not contracting with BCBSTX in Texas or any other Blue Cross and Blue Shield Plan outside of Texas (not contracting Allowable amount) – The Allowable amount will be the lesser of (i) the Provider's billed charges, or (ii) the BCBSTX non contracting Allowable Amount.  Except as otherwise provided in this section,

the non contracting Allowable Amount is developed from base Medicare Participating reimbursements adjusted by a predetermined factor established by BCBSTX. Such factor shall not be less than 75% and will exclude any Medicare adjustment(s) which is/are based on information on the claim.

When a Medicare reimbursement rate is not available or is unable to be determined based on the information submitted on the claim, the Allowable Amount for non-contracting Providers will represent an average contract rate in aggregate for Network Providers adjusted by a predetermined factor established by BCBSTX. Such factor shall be not less than 75% and shall be updated not less than every two years.

37. On September 3, 2019, BCBSTX stated that "Based on your plan, our prior response dated January 4, 2019 completed the internal appeal process that is available to you."

38. On September 4, 2019, Horizon sent a response to Plaintiff's letter dated August 21, 2019. Horizon stated that the claim "was processed correctly in accordance with the member's out-of network level of benefits. Therefore, no further reimbursement will be made."

39. Significantly, however, Horizon stated in this response that its denial of benefits was based on "Horizon BCBSNJ's payment methodology."

40. By basing its denial on Horizon's payment methodology, Horizon acted as the claims administrator for the Plan Defendant.

41. By requiring Blue Card appeal forms to be sent to Horizon, Horizon acted as the agent of BCBSTX.

42. Plaintiff exhausted the Patient's administrative remedies.

43. In its January 4, 2019, letter, BCBSTX stated that it had reimbursed Plaintiff based on its out-of-network methodology. However, BCBSTX sent an authorization to Patient LPH on July 23, 2018, which had granted an in-network exception. Accordingly, Patient LPH should not have been liable for out-of-network patient responsibility amounts, and Defendant should have reimbursed Plaintiff in full or entered into negotiations. Instead, Patient LPH was financially liable for the entire amount of her first-stage breast reconstruction including her ONET deductible.

44. The Plan SPD provides for two different methodologies for normal out-of-network reimbursement, unlike here, depending on whether the Medicare rate was available: if the rate were available the reimbursement rate would be based on the lesser of the provider's billed amount or some percentage of that base amount; if the Medicare rate were unavailable the reimbursement rate would be based on the lesser of the provider's billed amount or some percentage of the average in-network rate for Texas-based providers. Horizon and BCBSTX never described what methodology they actually used to reimburse Plaintiff, notwithstanding that neither was proper because they should have paid the billed amounts for breast reconstruction procedures.

45. By failing to set out the actual methodology they used to reimburse Plaintiff, Horizon and BCBSTX did not provide Plaintiff with a full and fair review under ERISA.

### C. November 29, 2018 Second-Stage Breast Reconstruction

46. On November 29, 2018, Dr. Cooperman performed the second-stage breast reconstruction on Patient LPH, shaping the breasts and inserting permanent breast implants after the tissue expander was deflated. Plaintiff obtained prior authorization from Horizon under 18303AAD3A.

47. Plaintiff submitted an invoice on a CMS-1500 form, as required, for $254,288.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 19380-50 | $79,316.00 | $1,532.57 |
| 19371-59,50 | $84,972.00 | $600.29 |
| 19340-50 | $90,000.00 | $592.97 |
| **Total** | **$254,288.00** | **$2,725.83** |

CPT codes 19380, 19371, and 19340 are breast reconstruction procedures. The modifier -59 means a distinct procedure that should be independently reimbursed.

8

48. The Blue Cross Blue Shield Defendants determined that the Allowed Amount for the November 29, 2018, surgery was $2,725.83, leaving an unpaid amount of $251,562.17.

49. Plaintiff filed a first-level appeal concerning Plaintiff's bill on July 30, 2019. BCBSTX denied this appeal on August 26, 2019, concluding that the "Charge exceeds the priced amount for this service.  Services provided by a non-Participating Provider.  Patient is responsible for charges over the priced amount." It concluded that this "completed the internal appeal response that is available to you."

50. Plaintiff thereby exhausted the Patient's administrative remedies.

51. Plaintiff sent a second authorization for this surgery, and an in-network exception. Accordingly, Defendant should have reimbursed Plaintiff in full, or entered into negotiations. Instead, Patient LPH was financially liable for virtually the entire amount of her second-stage breast reconstruction.

52. Plaintiff received a Designation of Authorized Representative from Patient LPH. It stated, in relevant part:

> I hereby appoint as a Designated Authorized Representative each of my Providers and . . . lawyers (including the Law Offices of Cohen and Howard) . . . [including the] right of my Authorized Representative to pursue . . . litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest, and attorney fees.

53. ERISA allows an Authorized Representative to bring litigation on behalf of a Plan Participant or Beneficiary of an ERISA Plan.  In its appeal documents, BCBSTX confirmed this determination, stating: "If the member's benefit plan is governed by ERISA, the member or the member's authorized representative may have the right to take legal action under Sec. 502(a) of ERISA if the benefit decision is upheld on appeal."

9

### D. Full Coverage of Breast Reconstruction Surgery under the Women's Health and Cancer Rights Act

54. Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), enacted in 1998, which requires group health plans to cover breast reconstruction after a mastectomy. This law, codified at 29 U.S.C. § 1185b, states:

> (a) In general. A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –
>
> > (1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient. Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .
>
> (d) Rule of construction. Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

55. 29 U.S.C. § 1185b(d), which deals with negotiation of reimbursement amounts with providers, concerns participating providers. Aetna did not negotiate with Dr. Cooperman.

56. The WHCRA was enacted in October 21, 1998, not only because of horror stories of "drive-through mastectomies" where women were forced into four-hour out-patient mastectomy surgeries by their insurance companies to save money, but because of denials of coverage for breast reconstructions on the basis that such reconstructions were cosmetic. As Senator Snowe stated in committee:

> We have also found that breast reconstructive surgery is considered cosmetic surgery. Well, it is not. Forty-three percent of women who want to undergo breast reconstructive surgery cannot because it is deemed cosmetic. And that is wrong. Breast reconstructive surgery is designed to restore a woman's wholeness.

144 Cong. Rec. § 4644 at *4648 (May 12, 1998).

57. Accordingly, breast reconstruction was a covered service under Patient LPH's Plan.

10

58. Notwithstanding this federal mandate, upon information and belief Horizon did not have any provider with admitting privileges at Saint Barnabas Medical Center in its network who was qualified to perform the two-stage breast reconstruction surgery that was performed on Patient LPH.  There was no in-network provider in the hospital who could have performed the first-stage breast reconstruction on the same day as the bilateral mastectomy, so that Patient LPH did not have to undergo two separate surgeries under new anesthesia – with all the accompanying risks of infection, complications, and the psychological impact of the delay in reconstruction.

59. Dr. Cooperman worked as a team with Patient LPH's surgical oncologist to ensure that the first stage of the Patient's breast reconstruction could begin immediately after the mastectomy was completed, and while the Patient was still under anesthesia. This way, the Patient did not have to be administered anesthesia twice, which reduced the risk of serious side effects, and eliminated the possibly devastating psychological effects of waiting weeks or months for breast reconstruction surgery upon being discharged from the hospital after a mastectomy.

60. Dr. Cooperman is double Board-certified in Plastic and Reconstructive Surgery and General Surgery. He specializes in breast reconstruction and microsurgery.

61. Dr. Cooperman attended medical school at George Washington University and completed his General Surgery residency at Saint Barnabas Medical Center. He then continued his residency in Plastic and Reconstructive Surgery at the University of Louisville.  Dr. Cooperman is the official plastic surgeon for Seton Hall University Athletics.

62. Defendants' decision to assess the patient $428,866.17 (almost half-a-million dollars) in out-of-pocket costs for breast reconstruction surgeries that must be covered is not a coverage decision.  It is, instead, a decision forcing Patient LPH to self-insure her own breast reconstruction surgery, in violation of the WHCRA.  This is the kind of medical reimbursement determination that frequently trigger medical bankruptcies.

11

### E. Breast Reconstruction under New Jersey Law

63. It is also in violation of New Jersey law. On May 3, 2013, the Commissioner of New Jersey's Department of Banking and Insurance ("DOBI") issued Bulletin 13-10 based on New Jersey statutes, noting that "It has come to the Department's attention that there have been recurring instances of the inability of patients to obtain in-network benefits for the services of non-network surgeons performing breast reconstruction as part of the surgical procedure in which a mastectomy is performed. In some cases, carriers have been declining patient requests to use out-of-network surgeons, asserting the availability of in-network surgeons. However, the in-network surgeons frequently do not perform, or are not qualified to perform, the particular type of requested reconstructive surgery."

64. In this case, Defendant did not decline Patient LPH request to have Dr. Cooperman perform her breast reconstruction surgery. Rather, knowing that there was no in-network provider who could perform this surgery, Defendants paid Plaintiff the out-of-network rate which forced Patient LPH to self-insure her own breast reconstruction surgery.

65. The DOBI Commissioner continued: "In other cases, in-network oncological surgeons may be practicing as part of a team which includes out-of-network reconstructive surgeons who could participate at the same surgical session in which the mastectomy is performed, thus avoiding the need for the covered person to undergo a separate institutionalization and surgery for the breast reconstruction."

66. This is precisely what occurred with Patient LPH.

67. The DOBI Commissioner concluded that when an insurer in New Jersey did not have a breast reconstruction surgeon in its network, it should approve the use of an out-of-network specialist but ensure that its member receives this service at the in-network co-pay amount. This requirement ensures that a cancer patient under New Jersey law and with coverage under the

WHCRA, as here, does not face ruinous balance bills simply by choosing an out-of-network specialist.

68. Defendants violated this law. Defendants should have ensured that Patient LPH received her breast reconstruction surgery at the in-network level of patient responsibility. Instead, Patient LPH was charged out-of-network-level co-pays.

### F. Full and Fair Review under ERISA

69. 29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

70. Defendants did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder. Defendants did not provide full and fair review to Plaintiff.

71. In its September 3, 2019 letter, BCBSTX stated that the "charge exceeds the priced amount for this service." BCBSTX failed to describe what the priced amount for the service was; the pricing methodology; what internal rule or protocol that was used; or the Plan's review procedures.

72. In its September 4, 2019 letter, Horizon denied the claim, stating that the denial was based on "Horizon BCBSNJ's payment methodology," and that the charge was "processed correctly in accordance with the member's out-of-network level of benefits. Therefore, no further reimbursement will be made." Horizon did not describe its "payment methodology"; provide the specific reasons for the denial; refer to the specific plan provisions on which the determination was based; or describe the plan's review procedures.

73. Under ERISA, when an insurer fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted his administrative remedies.

74. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

### G. The Fiduciary Duties of the Plan Defendant

75. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and

beneficiaries like Patient LPH. It cannot permit its claims administrators to make claims determinations that would violate the terms of its SPD.

76. In this case, the Plan Defendant breached its fiduciary duties under ERISA by permitting the BCBS Defendants to make coverage decisions for breast reconstruction for Patient LPH, a member of the Plan, in violation of the Plan's SPD which covered breast reconstruction in accordance with the WHCRA.

## COUNT I

### CLAIM AGAINST DEFENDANT HORIZON FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

77. Defendant Horizon is obligated to pay benefits to the Defendant Plan participants and beneficiaries in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA. This obligation arises under the Blue Card Program, and under ERISA.

78. Defendant Horizon violated its legal obligations under this ERISA-governed Plan when it, together with BCBSTX, under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient LPH by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B), and for failing to provide the SPD to the Plan Participant and Plaintiff.

79. Plaintiff submitted invoices to Defendant Horizon for $431,592.00.

80. Defendant Horizon together with Defendant BCBSTX determined that the Allowed Amount was $5,485.66, leaving an under-reimbursed amount of $426,106.34. Defendant thereby reimbursed 1% of the total amount.

81. Defendant Horizon acted by itself in making denials and stating that it utilized its own payment methodology and acted as BCBSTX's agent under the Blue Card Program.

82. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant Horizon. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Horizon.

## COUNT II

### CLAIM AGAINST DEFENDANT BCBSTX FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

83. Defendant BCBSTX is obligated to pay benefits to the Defendant Plan participants and beneficiaries in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA. This obligation arises under the Blue Card Program, and under ERISA.

84. Defendant BCBSTX violated its legal obligations under the Plan when it, together with Horizon, under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient LPH by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B), and for failing to provide the SPD to the Plan Participant and Plaintiff.

85. Defendant BCBSTX together with Defendant Horizon determined that the Allowed Amount was $5,485.66, leaving an under-reimbursed amount of $426,106.34. Defendant thereby reimbursed 1% of the total amount.

86. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant BCBSTX. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant BCBSTX.

## COUNT III

### CLAIM AGAINST FIDELIS COMPANIES, LLC FOR VIOLATION OF ERISA 404 § (A)(1)(B)

87. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and Beneficiaries.

16

88. The Plan Defendant must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

89. An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity. For example, the Plan Defendant cannot fully delegate its fiduciary responsibilities to administer claims to a claims administer and be free of its fiduciary responsibilities under ERISA.

90. As a fiduciary, the Plan Defendant owed Plaintiff a duty of loyalty and the avoidance of self-dealing. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

91. The Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that its claims administrators under the Blue Card Program were reimbursing Plaintiff according to the Plan Defendant's SPD. Instead, Defendants Horizon and BCBSTX under-reimbursed Plaintiff for two surgeries. These two surgeries were covered under the terms of the SPD.

92. In addition, the Plan Defendant failed to monitor and correct the BCBS Defendants' misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

93. Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a) Ordering the Court to recalculate and issue unpaid benefits to Plaintiff;

(b) Ordering declaratory relief, surcharge, profits, and removal of the Plan Defendant for breach of its fiduciary duty and loyalty;

   (c)  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

   (d)  Awarding prejudgment interest; and

   (e)   Granting such other and further relief as is just and proper.

Dated: November 27, 2019

                /s/ Michael F. Fried
                AXELROD LLP
                354 North Fourth Avenue
                Highland Park, NJ 08904
                (732) 718-6171
                mfried@axelrodllp.com

                Robert J. Axelrod
                AXELROD LLP
                Admitted *pro hac vice*
                800 Third Avenue, Suite 2800
                New York, NY 10022
                (646) 448-5263
                rjaxelrod@axelrodllp.com

                Leslie S. Howard
                COHEN HOWARD LLP
                766 Shrewsbury Avenue, Suite 200
                Tinton Falls, NJ 07724
                (732) 747-5202
                lhoward@cohenhoward.com

                Attorneys for Ross Cooperman, M.D., LLC,
                on behalf of Patient LPH