UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSS COOPERMAN, M.D., LLC, ON BEHALF OF PATIENT LPH,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY and BLUE CROSS BLUE SHIELD OF TEXAS,<br><br>Defendants. | Case No.: 2:19-cv-19225<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

  This is an ERISA action concerning Defendants' alleged under-reimbursement to Plaintiff out-of-network medical provider for post-mastectomy breast reconstruction surgical services rendered to patient LPH. Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon") moves to dismiss Plaintiff's First Amended Complaint in its entirety. ECF No. 25. Defendant Health Care Service Corporation, a Mutual Legal Reserve Company, a division of which named Defendant Blue Cross Blue Shield of Texas is a part, ("BCBS Texas") moves to dismiss Count II of Plaintiff's First Amended Complaint. ECF No 24. Plaintiff moves to strike portions of Defendants' reply briefs. ECF No. 31. Plaintiff also moves to strike Defendant Horizon's Notice of Supplemental Authority. ECF No. 36. The Court reviewed the parties' submissions and decides the motions without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, the Court **DENIES** Plaintiff's motions to strike and **GRANTS** Defendants' motions to dismiss.

  **I.**  **BACKGROUND**

  On July 26, 2018, Patient LPH (the "Patient"), who suffered from bilateral ductal carcinoma, underwent a bilateral mastectomy with tissue expander at St. Barnabas Medical Center in Livingston, New Jersey. Am. Compl., ECF No. 9, ¶ 25. Dr. Ross Cooperman performed a two-stage, post-mastectomy breast reconstruction on the Patient on July 26, 2018 and November 29, 2018. *Id.* at ¶¶ 25, 46. Plaintiff in this matter is Ross Cooperman, M.D., LLC, a medical practice group based in Livingston, New Jersey, and Dr. Ross Cooperman is the practice's lead physician. *Id.* at ¶ 13. Dr. Cooperman and his practice are not part of Defendant Horizon or BCBS Texas's network of participating healthcare providers—Plaintiff and Dr. Cooperman are "out-of-network." *Id.* at ¶ 7. On the dates of service, the Patient had health coverage through a health benefit plan (the "Plan") issued by BCBS Texas to the Patient's employer, Defendant Fidelis Companies

LLC ("Fidelis"), a recruiting and consulting company based in Plano, Texas. *Id.* at ¶ 16.[1] There is no dispute that the Plan is an "employee welfare benefit plan" governed by and subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

BCBS Texas is the Blue Cross Blue Shield Association's licensee in Texas and it issues health plans to Texas-domiciled individuals and corporations, such as Fidelis. Am. Compl., ¶¶ 17-19, 23. Horizon is the Association's licensee in New Jersey, where Plaintiff is based and where the Patient underwent her surgeries. *Id.* at ¶¶ 14, 18, 19, 23. *Id.* at ¶¶ 3, 14, 17-19, 23. In this case, BCBS Texas is the "Home Plan"—the Association licensee that issues and/or administers the plan in which the patient is actually enrolled. Horizon is the "Host Plan"—the Association licensee that services the geographic area in which the medical services are actually rendered. *Id.* Through the Blue Cross Blue Shield Association's BlueCard Program, a patient enrolled in a Home Plan who resides in or travels to another state (i.e., the "Host Plan's" state) may receive covered services from a provider who participates in the Host Plan's network, and the Home Plan will treat those services as "in-network" services as though the patient had received them from a "Home Plan" participating provider. *Id.* at ¶¶ 17-24.

Plaintiff alleges that both stages of Patient's surgery were preauthorized, and that Plaintiff received an "in-network exception." Am. Compl., ¶¶ 28, 46, 64. Plaintiff additionally alleges that Horizon did not have any provider with admitting privileges at Saint Barnabas Medical Center in its network who was qualified to perform the two-stage breast reconstruction surgery. *Id.* at ¶ 58. Following each stage of the Patient's surgery, Plaintiff submitted invoices for its services. Collectively, those invoices totaled $431,592. *Id.* at ¶¶ 8, 29, 47. Plaintiff submitted these invoices to Horizon, as the Host Plan, and Horizon transmitted them to BCBS Texas, as the Home Plan. *Id.* at ¶¶ 29-35. The allowed out-of-network amount under the Patient's Plan was $5,485.66. According to Plaintiff, the difference between what Plaintiff billed and what the Plan paid left "an unreimbursed amount of $426,106.34, and taking into account patient responsibility, $423,379.56." *Id.* at ¶ 8. Plaintiff engaged in and exhausted the Plan's administrative appeals seeking additional reimbursement, without success. *Id.* at ¶¶ 42, 48, 49, 50. On October 22, 2019, Plaintiff filed a Complaint, seeking to recover the unreimbursed amount of its billed charges. ECF No. 1. On November 27, 2019, Plaintiff filed an Amended Complaint, seeking the same relief, but adding BCBS Texas and Fidelis as defendants. ECF No. 9.

In Count I, Plaintiff claims that Defendant Horizon, in violation of the Plan and 29 U.S.C. § 1132(a)(1)(B), ERISA § 502 (a)(1)(B), under-reimbursed Plaintiff for breast reconstruction surgeries. *Id.* at ¶¶ 77-82. In Count II, Plaintiff claims that Defendant BCBS Texas, in violation of the Plan and § 1132(a)(1)(B), also under-reimbursed Plaintiff. Am. Compl., ECF No. 9, ¶¶ 83-86. Plaintiff contends that Defendants should have either reimbursed Plaintiff in full for its billed charges or entered into negotiations.

---

[1] Plaintiff voluntarily dismissed this lawsuit without prejudice against Fidelis on January 2, 2020. ECF No. 21.

*Id.* at ¶¶ 43, 51.  Plaintiff purports to bring this action, not in its direct capacity, but "on behalf of Patient LPH" as the Patient's "Authorized Representative under ERISA."  *Id.* at ¶¶ 5, 52, 53.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.  DISCUSSION

Both Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants BCBS Texas and Horizon argue: (1) Plaintiff lacks direct standing to assert a claim under ERISA § 502(a)(1)(B) and it may not assert derivative standing due to the plan's anti-assignment provision, and (2) Plaintiff fails to state a claim because it does not link its demand for additional benefits to any specific plan term.  Horizon additionally argues that (3) Horizon is not a proper defendant on an ERISA § 502(a)(1)(B) claim because it does not insure, underwrite, or administer the Plan.  The Court addresses whether Plaintiff lacks standing to assert an ERISA § 502(a)(1)(B) claims on behalf of the Patient.

Plaintiff seeks relief against Defendants through ERISA § 502(a)(1)(B), which provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may be eligible to receive a benefit of any type from an employee benefit plan."  29 U.S.C. § 1002(7).  A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  Defendants argue that medical providers and provider groups, such as Plaintiff, meet neither definition, and ERISA confers no direct rights upon providers, citing

*Franchise Tax Board. v. Construction. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983). The Third Circuit, however, recognizes derivative provider standing if the provider obtains an assignment of benefits. *See New Jersey Brain & Spine Center v. Aetna*, 801 F.3d 369 (3d Cir. 2015). Defendants argue that the Patient's Plan contains a clear and unambiguous anti-assignment provision.[2]  The Third Circuit held in *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." 890 F.3d 445, 453 (3d. Cir. 2018). Consequently, Defendants argue that Plaintiff lacks standing because the Patient cannot assign her ERISA § 502(a)(1)(B) claim to Plaintiff Ross Cooperman, M.D., LLC. BCBS Texas's Mot., ECF No. 24, 5-6; Horizon's Mot, ECF No. 25, 10-13.

Plaintiff responds that Plaintiff's assignment was valid because Plaintiff received a Designation of Authorized Representative from the Patient.[3]  Plaintiff appears to argue that 29 C.F.R. 2560.503-1(b)(4) vitiates the anti-assignment provision in patients' plans where there is a Designation of Authorized Representative. Pl.'s Resp., ECF No. 26, 6.

29 C.F.R. 2560.503-1 is one of ERISA's implementing regulations which establishes, *inter alia*, internal administrative appeal procedures that a plan must maintain by which a claimant may appeal an adverse benefit determination within the plan prior to filing suit. On reply, both Defendants argue that 29 C.F.R. 2560.503-1(b)(4) applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal courts. Horizon's Reply, ECF No. 29, 4-7; BCBS Texas Reply, ECF No. 30, 2-3. Plaintiff requests that the Court strike this argument from Defendants' reply briefs because they do not raise it in their opening briefs. Pl.'s Mot. to Strike 3-4. "The law is clear that reply briefs should respond to arguments raised in the opposition brief, or

---

[2]  The Certificate of Coverage states that: "Except as provided in the section Assignment and Payment of Benefits, rights and benefits under the Plan are not assignable, either before or after services and supplies are provided." Horizon's Mot., ECF No. 25, Ex. A (bates stamped pages BCBSTX 00031 and 00114). The referenced "Assignment and Payment of Benefits" section, in turn, provides: "If a written assignment of benefits is made by a Participant to a Provider and the written assignment is delivered to the Carrier with the claim for benefits, the Carrier will make any payment directly to the Provider. Payment to the Provider discharges the Carrier's responsibility to Participant for any benefits available under the Plan." *Id*. (bates stamped page BCBSTX 00088). Thus, for purposes of payment, the Plan will pay an out-of-network provider directly (rather than send payment to the member for the member, in turn, to forward to the provider) if an assignment is included with the underlying claim, but the Plan otherwise prohibits members from making wholesale transfers of their rights and benefits under the Plan to others.

[3]  Plaintiff Designation of Authorized Representative from the Patient states, in relevant part: "I hereby appoint as a Designated Authorized Representative each of my Providers and . . . lawyers (including the Law Offices of Cohen and Howard) . . . [including the] right of my Authorized Representative to pursue . . . litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest, and attorney fees." Horizon's Mot., ECF No. 25, Ex. A.

explain a position in the initial brief that the respondent refuted." *Smithkline Beecham PLC v. Teva Pharm. USA, Inc.*, No. CIV.A. 04-0215, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007). Because Defendants argued in motions to dismiss that the anti-assignment provision deprives Plaintiff of standing to bring this suit on the Patient's behalf and they merely refute related arguments asserted in opposition, Defendants properly asserted this argument on reply. Plaintiff's Motion to Strike the Portions of Defendants' Motions to Dismiss Reply Briefs that Raise New Arguments, ECF No. 31, is **DENIED**.

The Court will now consider the merits. 29 C.F.R. 2560.503-1(b)(4) provides that "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . ." 29 C.F.R. 2560.503-1(b) The regulation continues, "[t]he claims procedures for a plan will be deemed to be reasonable only if . . . [t]he claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination. Nevertheless, a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant . . ." *Id.* at (b)(4). This Court has repeatedly held that this regulation applies only to internal claims and appeals, not to federal lawsuits brought after the plan member exhausts those appeals. *See, e.g.*, *Menkowitz v. Blue Cross Blue Shield of Illinois*, No. CIV. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014) (29 C.F.R. 2560.503-1(b)(4) "applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal courts."); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. CIV.A. 14-6950 FLW, 2015 WL 4387981, at *8 (D.N.J. July 15, 2015) (quoting *Menkowitz*, WL 5392063, at *3 (D.N.J. Oct. 23, 2014)). In all of its many filings, Plaintiff raises no argument as to why the Court should not adopt this reasoning.[4] Consequently, the Court holds 29 C.F.R. 2560.503-1(b)(4) does not bar enforcement of the anti-enforcement clause in Patient's Certificate of Coverage in light of its Designation of Authorized Representative.

On April 30, 2020, Defendant Horizon filed a Notice of Supplemental Authority directing this Court's attention to the this Court's April 27, 2020 opinion in *Somerset Orthopedic Associates, P.A. v. Horizon Healthcare Services, Inc.* Civ. No. 19-8783, 2020 WL 19833693 (D.N.J. Apr. 27,2020), which addresses, among other things, how derivative standing under ERISA is impacted by an anti-assignment provision. Horizon's

---

[4] Plaintiff states that, "In its appeal documents, BCBSTX confirmed" that ERISA allows an Authorized Representative to bring litigation on behalf of Plan Participants or beneficiaries, "stating: 'If the member's benefit plan is governed by ERISA, the member or the member's authorized representative *may* have the right to take legal action under Sec. 502(a) of ERISA if the benefit decision is upheld on appeal.'" Pl.'s Mot. to Strike, ECF No. 31, 1 (citing Am. Compl. ¶ 53) (emphasis added). Plaintiff does not cite to any exhibit that contains this quote, but even if it did, the quote does not guarantee an authorized representative the right to assert a claim on behalf of a patient in federal court. It describes future legal action as a mere potentiality.

5

Notice of Supp. Authority, ECF No. 35. Plaintiff filed a motion to strike the argument section of the Notice of Supplemental Authority because it included "substantial legal arguments concerning how that decision purportedly was relevant to several issues in this case." Pl.'s Mot. to Strike, ECF No. 36, 2. The Court finds that the Notice of Supplemental Authority does not impermissibly add to the factual or legal arguments already submitted. Plaintiff's Motion to Strike, ECF No. 36, is **DENIED**. The Court nevertheless does not consider *Somerset Orthopedic Assocs.* WL 19833693 (D.N.J. Apr. 27, 2020) because it does not address the issue concerning the applicability of 29 C.F.R. 2560.503-1(b)(4).

For all of these reasons, the Court finds that Plaintiff Ross Cooperman, M.D., LLC does not have standing to assert Patient's ERISA claim. The Court declines to address the remainder of Defendants' arguments. Defendants' motions to dismiss are **GRANTED**.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss, ECF Nos. 24 and 25 are **GRANTED**. Plaintiff's Motions to Strike, ECF Nos. 31 and 36 are **DENIED**. Plaintiff's Amended Complaint, ECF No. 9, is **DISMISSED WITH PREJUDICE**.

**Date: September 10, 2020**              */s/ William J. Martini*
                                          **WILLIAM J. MARTINI, U.S.D.J.**